06 CV 2385

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

THE CITY OF NEW YORK,

Plaintiff,

v.

NY FIRE & POLICE UNIFORMS INC., d/b/a www.NYFirePolice.com; EISNER BROS., d/b/a www.eisnerbros.com and ISRAEL EISNER, SHALOM EISNER and JOHN DOES 1 through 5, individually,

Defendants.

---------------------------------------------------------------- x

ECF CASE
06 CV 2385 (RMB)

**COMPLAINT**

Plaintiff demands trial by jury

RECEIVED MAR 27 2006 U.S.D.C. S.D. N.Y. CASHIERS

Plaintiff, the City of New York (the "City"), by its attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, for its Complaint against the Defendants, respectfully alleges, upon personal knowledge as to itself and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. This action is based upon Defendants' unlawful use of registered and common law trademarks associated with the New York City Police Department ("NYPD"), the Fire Department of the City of New York ("FDNY") and the Department of Sanitation of the City of New York ("DSNY") in connection with Defendants' manufacture and sale of knowingly infringing merchandise bearing such marks.

## PARTIES

2. The City is a municipal corporation organized pursuant to the laws of the State of New York.

3. Defendant NY Fire & Police Uniforms, Inc. is a New York corporation, with its principal place of business at 1427 58th Street, Brooklyn, New York 11219.

4. Defendant Eisner Bros. is a business entity, the form of which has yet to be determined, but presumably it is a partnership. Eisner Bros. has offices at 75 Essex Street, New York, New York 10002.

5. Defendant Israel Eisner is an individual residing in the State of New York and, upon information and belief, he personally supervises and directs the infringing and tortious activities of Defendant NY Fire & Police Uniforms Inc. complained of herein.

6. Defendant Shalom Eisner is an individual residing in the State of New York and, upon information and belief, he personally supervises and directs the infringing and tortious activities of Eisner Bros. complained of herein.

7. Defendants John Does 1 through 5 are presently unidentified individuals, who also personally supervise and direct the infringing and tortious activities complained of herein.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the City's Lanham Act claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and over the other claims set forth below by virtue of 28 U.S.C. §§ 1338(b) and 1367, and the doctrine of pendent jurisdiction.

9. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), because a substantial part of the events giving rise to the claims occurred in this district and because one of the Defendants, a corporation, is subject to personal jurisdiction in this district.

## THE NYPD TRADEMARKS

10. The City owns all trademarks, logos, names, and insignia associated with the NYPD, including the acronym NYPD (the "NYPD Mark") and a design consisting of the

terms POLICE DEPARTMENT CITY OF NEW YORK surrounding a shield design (the "NYPD Shield"), which appears as follows:

11. The City, by and through the NYPD, has provided police and civil protection services since at least as early as 1845.

12. The City, by and through the NYPD, has continuously used the NYPD Shield, since at least as early as July 1, 1971.

13. Since at least as early as 1989, the City has used the NYPD Mark and the NYPD Shield (collectively, the "NYPD Trademarks") on goods sold to the public through the City Store.

14. The NYPD Trademarks have been prominently featured in print and broadcast media, in promotional activities, and on a wide variety of licensed goods that are distributed nationally and throughout the world.

15. The NYPD Trademarks also have been prominently featured in numerous theatrical motion pictures and in a number of long running and highly successful television series, including among others, "NYPD Blue," "Law and Order" and "Third Watch."

16. As a result of the NYPD's exceptional reputation, and the media attention and other publicity the NYPD has received throughout the years, particularly after the events of September 11, 2001, the NYPD Trademarks have acquired tremendous goodwill and value, and

are now recognized throughout the United States and the world as uniquely designating the NYPD. The distinctive NYPD Trademarks are famous, and they are among the best known trademarks in the United States.

17. Acting under specific authority from the Police Commissioner, the New York City Police Museum (the "NYC Police Museum") and the NYC Police Foundation previously granted domestic and international licenses to a number of different companies to produce various merchandise bearing the NYPD Trademarks, including children's sleepwear, lounge pants and boxer shorts and sets, active wear for men, women, and children, long johns, resin figurines, plush dogs and horses, plush beanie bears, infant's clothing, pencils, pens, pen cases, playing cards, mugs, glassware, collectible plates and spoons, wallets, backpacks, messenger bags, handbags, mint tins, picture frames and photo albums, key rings, snow globes, mouse pads, pendants, children's Halloween costumes, slippers and moccasins, leather outerwear, action figures, ceramic figurines, die-cast vehicles (including tow trucks, police cars, boats, and helicopters), watches, lighters, lapel pins, magnets, metal coin banks, bicycles, scooters, bike helmets, accessory kits, throws, pillows, wall hangings and numerous other items.

18. The City continues to have an extensive merchandise licensing program, which is administered by the New York City Marketing Development Corporation, as the exclusive agent for the licensing of all of the City's various trademarks.

19. Authorized licensed merchandise generally bears a hologram, hangtag or packaging showing the NYPD Shield, together with a legend identifying the NYPD Mark and the NYPD Shield as trademarks of the City.

20. The City owns federal trademark registrations for the NYPD Trademarks (Reg. Nos. 3,014,363 and 3,061,459) in International Classes 6, 9, 14, 20, 21, 25, and 28 (for metal key chains; magnets; jewelry; plastic key chains; house wares; clothing; and toys).

21. The City, through the NYPD, has also obtained New York State trademark registrations for the NYPD Shield (Reg. No. R-30538, formerly Reg. No. R-29800) and NYPD Mark (Reg. No. R-30537, formerly Reg. No. R-29799).

22. The City also owns registrations for the NYPD Trademarks in California (Reg. Nos. 108,017 and 108,018) and for the NYPD Mark in Japan (Reg. No. 01106542).

23. The City owns applications for registrations of the NYPD Trademarks in Canada (Serial Nos. 1133764 and 1133765).

24. The City owns registrations for the NYPD Trademarks in the European Union (Reg. Nos. 3747326 and 3743127).

**THE FDNY TRADEMARKS**

25. The City also owns all trademarks, logos, names and insignia associated with the FDNY, including the acronym "FDNY" (the "FDNY Mark"), a distinctive shield design with the words FIRE DEPARTMENT CITY OF NEW YORK and the colors red, white and blue with a gold border and a stylized Maltese cross with flames inside over a stylized representation of the New York City skyline in the background (the "FDNY Shield"), and a Maltese Cross design containing the letters "F.D.N.Y." (collectively, the "FDNY Trademarks").

26. The City began using the FDNY acronym shortly after the FDNY's formation as a professional fire department in 1865. The FDNY Shield was created in 1976 and was made a part of the official uniform shortly thereafter, appearing as follows:

27. The City has used the FDNY Mark and the FDNY Shield to identify the FDNY and its services on goods sold to the public through the City Store since at least as early as 1989.

28. The City began using its Maltese Cross design in connection with the provision of fire prevention service in 1887 and its has been using the Maltese Cross to identify the FDNY and its services on goods sold to the public since at least as early as 2000. The Maltese Cross design appears as follows:

29. The FDNY Trademarks have been prominently featured in print and broadcast media, in promotional activities, and on a wide variety of licensed merchandise that is distributed nationally and throughout the world.

30. The FDNY Trademarks also have been prominently featured in numerous theatrical motion pictures and television series, including among others, "Third Watch" and "Rescue Me."

31. As with the NYPD trademarks, the goodwill and reputation associated with the FDNY Trademarks, and the public's association of the FDNY Trademarks with the FDNY, has grown dramatically in light of the tragic events of September 11, 2001. As a result, the FDNY Trademarks are famous and are widely recognized throughout the United States and the world as uniquely designating the FDNY.

32. Through the FDNY Foundation, the FDNY Trademarks have been licensed both domestically and internationally for use on many items, including die-cast collectable fire vehicles; t-shirts, sweatshirts, and baseball caps; coffee mugs and other drinking glasses; key chains, pens, pen sets, pencils and erasers; collector spoons and collector plate products; coasters; backpacks; paper cubes and loose leaf binders; children's dinner sets; coin banks; placemats; water globes; photo albums; coloring books and crayons; mouse pads; teddy bears; lunch boxes and thermoses; bottled water; video games; animated figures; and toy electric trains and accessories.

33. The City continues to have an extensive licensing program for merchandise bearing the FDNY Trademarks, which is administered by the New York City Marketing Development Corporation, as the exclusive agent for the licensing of all of the City's various trademarks.

34. Generally, authorized items bear a hologram or hangtag with FDNY fire prevention and safety tips and packaging identifying the FDNY and showing the FDNY Mark and the FDNY Shield Design.

35. The City owns federal trademark Registration No. 2,606,740 for the FDNY Mark in International Class 25 for clothing and owns federal trademark Registration No. 3,026,049 for the FDNY Mark in International Classes 6, 9, 11, 14, 16, 18, 20, 21, 24, 26 and 28

(for metal key chains; magnets; flashlights; jewelry; publications; bags; plastic key chains; house wares; blankets; cloth patches; and toys).

36. The City owns a federal trademark application for the FDNY Shield (Serial No. 76/616,822) in International Classes 6, 9, 14, 16, 18, 20, 21, 25, 26, 28 and 32 (for metal key chains; magnets; jewelry; publications; bags; plastic key chains; house wares; clothing; cloth patches; toys; and water). This application was published for opposition on January 19, 2006. No opposition was filed and a registration for the FDNY Shield should issue shortly.

37. The City owns a federal trademark application for the Maltese Cross (Serial No. 76/622,258) in International Classes 25 for clothing (namely, shirts, t-shirts, tank tops, sweatshirts, sweatpants, sweat suits, pants, shorts, jackets, vests, coats, rainwear, pullovers, sweaters, aprons, neckties, boxer shorts, scarves, hats and caps).

38. The City, through the FDNY, has also obtained New York State trademark registrations for its FDNY Mark (Reg. No. R-30501, formerly Reg. No. R-29814) and FDNY Shield Design (Reg. No. R-30502, formerly Reg. No. R-29815), and has also obtained California State trademark registrations for its FDNY Mark (Reg. No. 110803) and FDNY Shield (Reg. No. 110804).

39. The City also owns registrations for the FDNY Trademarks in the European Union (Reg. Nos. 2,589,588 and 2,589,596), and owns a registration in Canada for the FDNY Mark (Reg. No. 641,237), as well as an application for registration of the FDNY Shield (Serial No. 1133763).

**THE DSNY TRADEMARKS**

40. The City also owns all trademarks, logos, names and insignia associated with the DSNY, including the acronym "DSNY" (the "DSNY Mark") and a distinctive shield design with the words THE CITY OF NEW YORK DEPARTMENT OF SANITATION and the colors red, yellow and aqua with a white border featuring a Caduceus (serpent and staff) with the letter S (the "DSNY Shield Design") (collectively, the "DSNY Trademarks").

41. The City began using the DSNY acronym since approximately 1929 in connection with its professional sanitation department. The DSNY Shield Design was created in 1996 and was made a part of the official uniform shortly thereafter, appearing as follows:

42. The City has used the DSNY Trademarks to identify the DSNY and its services on goods sold to the public through the City Store since at least as early as 2002 and the DSNY Trademarks are currently licensed for use on a wide variety of merchandise and apparel sold to the public in interstate commerce.

43. The City continues to have an extensive licensing program for merchandise bearing the DSNY Trademarks, which is administered by the New York City Marketing Development Corporation, as the exclusive agent for the licensing of all of the City's various trademarks.

44. Generally, authorized items bear a hologram or hangtag showing the DSNY Trademarks are owned by the City.

45. As a result of the foregoing, the DSNY Trademarks have acquired secondary meaning as exclusive identifiers of the DSNY and are associated in the minds of a substantial segment of consumers with the DSNY and the City.

46. The City owns federal trademark Registration No. 3,065,742 for the DSNY Shield Mark in International Class 25 for clothing (t-shirts, sweatshirts, scarves, neckties and baseball caps) and International Class 28 (for toys and playthings, namely toy model cars, stuffed toy animals, toy dolls and accessories, molded plastic toy figurines, toy banks, Christmas tree ornaments, and jigsaw puzzles).

**Defendants' Use of the NYPD, FDNY and DSNY Trademarks**

47. Defendants are using the NYPD, FDNY and DSNY Trademarks on a wide variety of merchandise that they are manufacturing and selling in interstate commerce to members of the general public.

48. Defendants have failed to comply with Plaintiff's demands to cease and desist from engaging in such infringing activity.

49. The City is suffering, and will continue to suffer, irreparable injury unless Defendants are enjoined from continuing to manufacture and sell merchandise bearing the NYPD, FDNY and DSNY Trademarks.

50. If the sale of the merchandise bearing the NYPD, FDNY and DSNY Trademarks by Defendants is not enjoined by this Court: (a) the public will be confused, misled and deceived as to the source and origin of Defendants' products and will mistakenly assume that Defendants' goods are authorized, sponsored, approved or produced by or for the City or its agencies, or that Defendants are affiliated with the City or its agencies; (b) consumers will be

misled into purchasing unauthorized products, causing dilution and irreparable damage to the distinctive value and reputation of the NYPD, FDNY and DSNY Trademarks and the City's licensing program; (c) the Defendants will be unjustly enriched by their misappropriation of the substantial goodwill of the NYPD, FDNY and DSNY Trademarks; and (d) fundraising efforts for the NYPD, FDNY and DSNY will suffer the permanent loss of substantial revenues from the sale of licensed products.

51. The City has no adequate remedy at law.

**COUNT I**
**(Trademark Infringement with Respect to Unauthorized NYPD, FDNY and DSNY Merchandise)**

52. Plaintiff repeats and re-alleges the allegations of Paragraphs 1-51 as though fully set forth herein.

53. Plaintiff owns federal registrations for the NYPD Mark, the NYPD Shield, the FDNY Mark and DSNY Shield.

54. Defendants have manufactured and sold merchandise bearing the NYPD Mark, NYPD Shield, FDNY Mark and DSNY Shield that has not been approved by the City or its predecessors in interest.

55. Defendants' use of the NYPD Mark, NYPD Shield, FDNY Mark and DSNY Shield in interstate commerce on merchandise that was not approved by the City constitutes trademark infringement actionable under Section 32 (1) (a) of the Lanham Act, 15 U.S.C. § 1114 (1)(a).

56. Defendants have acted willfully and purposely with the intention of misleading the public into believing that their counterfeit and infringing merchandise originates with Plaintiff, is licensed by Plaintiff, or is in some way sanctioned by or affiliated with Plaintiff or its agencies.

57. Defendants' unauthorized distribution and sale of the counterfeit and infringing merchandise have resulted in profits to Defendants and have thereby deprived Plaintiff of revenue to which it is entitled.

58. By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained and is entitled to the remedies provided for in 15 U.S.C. §§ 1114 et seq., including injunctive relief.

**COUNT II**
**(False Designation of Origin with Respect to Unauthorized NYPD, FDNY and DSNY Merchandise)**

59. Plaintiff repeats and re-alleges the allegations of Paragraphs 1-58 as though fully set forth herein.

60. Defendants' use of the NYPD, FDNY and DSNY Trademarks in interstate commerce on merchandise that was not approved by the City constitutes a false designation of origin and/or a false description or representation, including words or symbols tending falsely to describe or represent the same, actionable under Sections 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61. Defendants have acted willfully and purposely with the intention of misleading the public into believing that their counterfeit and infringing merchandise originates with Plaintiff, is licensed by Plaintiff, or is in some way sanctioned by or affiliated with Plaintiff or its agencies.

62. Defendants' unauthorized distribution and sale of the counterfeit and infringing merchandise have resulted in profits to Defendants and have thereby deprived Plaintiff of revenue to which it is entitled.

63. By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained and is entitled to the remedies provided for in 15 U.S.C. §§ 1114 et seq., including injunctive relief.

**COUNT III**
**(Trademark Dilution in Violation of 15 U.S.C. § 1125(c))**

64. Plaintiff repeats and re-alleges the allegations of Paragraphs 1-63 as though fully set forth herein.

65. Plaintiff's NYPD and FDNY Trademarks are inherently distinctive and famous, and through many years of use by Plaintiff have come to represent, worldwide, the highest standards of quality and character unique to the NYPD and FDNY.

66. The Defendants' use of imitations of the famous and distinctive NYPD and FDNY Trademarks constitutes a commercial use in commerce of a mark or trade name, which has caused and will continue to cause irreparable dilution of the distinctive quality of Plaintiff's NYPD and FDNY Trademarks.

67. By their acts the Defendants have willfully intended to trade on Plaintiff's reputation/or the reputation of the NYPD and FDNY and to cause dilution of Plaintiff's famous and distinctive NYPD and FDNY Trademarks.

68. By reason of the foregoing, Plaintiff is entitled to damages and injunctive relief.

**COUNT IV**
**(Common Law Unfair Competition)**

69. Plaintiff repeats and re-alleges the allegations of Paragraphs 1-68 as though fully set forth herein.

70. Defendants' unauthorized use of Plaintiff's NYPD, FDNY and DSNY Trademarks constitutes misappropriation and infringement of such trademarks, actionable under the law of unfair competition.

71. By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained.

**COUNT V**
**(Trademark Infringement in Violation of General Business Law § 360-k)**

72. Plaintiff repeats and re-alleges the allegations of Paragraphs 1-71 as though fully set forth herein.

73. Plaintiff owns New York State registrations for the NYPD and FDNY Trademarks.

74. Defendants' unauthorized use of Plaintiff's NYPD and FDNY Trademarks in New York State without Plaintiff's consent, for the purpose of manufacturing and/or selling counterfeit and infringing merchandise, has caused and continues to cause confusion, mistake and deception in the minds of the public.

75. By manufacturing and/or selling the counterfeit and infringing merchandise, Defendants have counterfeited and infringed Plaintiff's NYPD and FDNY Trademarks registered under New York state law, and have willfully violated Section 360-k of the New York General Business Law.

76. Defendants' misappropriation, counterfeiting and infringement of Plaintiff's NYPD and FDNY Trademarks in New York State were willfully committed with the intent to cause confusion or mistake or deception among the consuming public.

77. By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained and is entitled to the remedies provided for in New York General Business Law §§ 360-k, 360-l and 360-m.

**COUNT VI**
**(Deceptive Trade Practices and False Advertising In Violation of New York General Business Law Sections 349, 350 and 350-e)**

78. Plaintiff repeats and re-alleges the allegations of Paragraphs 1-77 as though fully set forth herein.

79. Defendants' misappropriation, counterfeiting and infringement of Plaintiff's NYPD, FDNY and DSNY Trademarks represent a deliberate attempt to mislead consumers into believing that the Defendants' merchandise is authorized, sponsored, or otherwise affiliated with Plaintiff.

80. By engaging in such false and misleading marketing of its products, Defendants have engaged in deceptive acts or practices in violation of New York General Business Law § 349 and false advertising in violation of New York General Business Law §§ 350 and 350-e.

81. Such violations have resulted, upon information and belief, in profits to Defendants and have substantially harmed Plaintiff by depriving it of revenue to which it is entitled as a result of Defendants' unauthorized association of their merchandise with the NYPD, FDNY and DSNY.

82. By reason of the foregoing, Plaintiff is entitled to the remedies provided for in New York General Business Law §§ 349, 350 and 350-e.

**WHEREFORE,** Plaintiff prays that this Court:

A. Declare that Defendants, by the acts complained of herein, have infringed Plaintiff's NYPD, FDNY and DSNY Trademarks and has competed unfairly with Plaintiff and its licensees, and that the acts of the Defendants complained of herein will damage and diminish the distinctiveness of the NYPD, FDNY and DSNY Trademarks unless enjoined by this Court,

B. Order that Defendants, their officers, agents, servants, employees, warehousemen, and all other persons in concert or participation with Defendants be permanently enjoined from further acts of trademark infringement, dilution, or unfair competition, and particularly from, in any manner, directly or indirectly:

(a) using or otherwise infringing Plaintiffs NYPD, FDNY and DSNY Trademarks;

(b) using any mark or indicia that incorporates any of Plaintiff's NYPD, FDNY and DSNY Trademarks;

(c) manufacturing, distributing, circulating, selling, marketing, moving or otherwise disposing of merchandise bearing any simulation, reproduction, counterfeit, copy, colorable imitation or confusingly similar imitation of Plaintiff's NYPD, FDNY and DSNY Trademarks, or marketing, advertising or displaying their goods in any way that tends to deceive, mislead or confuse the public into believing that Defendants' merchandise is in any way sanctioned by or affiliated with Plaintiff or its agencies;

(d) using any false designation of origin or false description (including, without limitation, any letters or symbols) which can, or is likely to, lead the trade or public to believe that any product manufactured, advertised, distributed and/or sold by the Defendants is in any manner associated or connected with Plaintiff, or is sold, licensed, sponsored, approved or authorized by Plaintiff;

(e) otherwise competing unfairly with Plaintiff, its agencies, or its authorized licensees;

(f) diluting the distinctive quality of Plaintiff's NYPD and FDNY Trademarks; and

(g) assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (f) above.

D. Order that Defendants be required to deliver up for destruction all products, packaging, labels, literature, advertising and other material bearing imitations or reproductions, including confusingly similar variations of, the NYPD, FDNY and DSNY Trademarks, as well as all manufacturing plates, screens, molds, matrices, or other equipment used to reproduce the NYPD, FDNY and DSNY Trademarks.

E. Order that Defendants be required to account for and pay over to Plaintiff all gains, profits and advantages realized from the sale of counterfeit and infringing merchandise;

F. Order that Defendants be directed to file with this Court and serve on Plaintiff within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which the Defendants have complied with the injunction;

G. Enter judgment against Defendants for damages, in an amount to be determined, that Plaintiff has sustained as a consequence of Defendants' acts of trademark infringement, unfair competition, deceptive and unfair practices and trademark dilution, including trebled damages pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, and, if the City so elects, statutory damages for its willful counterfeiting of the NYPD, FDNY and DSNY Trademarks under 15 U.S.C. § 1117; plus Plaintiff's costs, expenses and reasonable attorney fees in connection with this action as provided in 15 U.S.C. § 1117; and

H. Such other, further and different relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a jury trial as to all issues triable by a jury in this suit.

Dated: New York, New York
March 27, 2006

MICHAEL A. CARDOZO
Corporation Counsel of the
City of New York
*Attorney for Plaintiff the*
*City of New York*
100 Church Street Rm 3-161
New York, New York 10007
(212) 788-0760

By: [signature]
GERALD E. SINGLETON (GS4750)
Assistant Corporation Counsel